## IN THE UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

GEER BROTHERS BODY SHOP, INC.,

               Plaintiff,

v.                                 CIVIL ACTION NO. 3:26-0047

JHCC HOLDINGS, LLC,

               Defendant.

### MEMORANDUM OPINION AND ORDER

Before the Court is Defendant JHCC Holdings, LLC's Motion to Stay Proceedings and to Compel Arbitration (ECF 6). For the reasons stated below, the Court **GRANTS** the Motion.

### BACKGROUND

Plaintiff Geer Brothers Body Shop, Inc. "was in the business of repairing damaged vehicles at two locations in Cabell County, West Virginia." ECF 1-1, Compl. ¶ 3. Defendant decided to purchase Plaintiff's business. *See id.* The parties executed three contracts. In the first—the Asset Purchase Agreement (APA)—Defendant agreed to purchase most of Plaintiff's assets and goodwill. *See id.*; ECF 6, Def.'s Mem., Ex. A (APA), Recital B. The APA expires after six years. ECF 8, Pl.'s Resp. 11. In the other two contracts, Defendant agreed to lease Plaintiff's business locations for ten to thirty years. *See* APA, Recital C; Pl's Resp. 11.

The APA includes the following provision:

Buyer may obtain prior to Closing a commercial property inspection report (the "Inspection Report") on each of the Facilities included in the Real Property. Buyer will provide the Inspection Report(s) to the Seller and they will attempt to mutually agree on a list of all items identified as needing attention, repair or replacement which Seller and Buyer have agreed the Seller and Equity Holder will be responsible for repairing or replacing (the "Agreed Repairs List"). If prior to the

effective date of the Real Estate Lease Agreement, the Seller, Equity Holder and/or Landlord has not completed the following work items on that property to Buyer's satisfaction: (i) replacement of PVC air lines with aluminum, (ii) all improvements being plumbed for gas; (iii) the Facilities being equipped with 60 AMP Three Phase Outlets with NEMA Plug 15-60 with #4 Guage Wire for use with new generation spot welder, for use in all body repair areas, (iv) 220-volt electrical outlets (50 amp, single phase, NEMA Plug #6-50R, #6 wire) located in the body repair area of the Facilities, (v) the Facilities being in compliance with all applicable electrical and other building code ordinances and regulations, (vi) bringing all car wash and gray water drainage into compliance with all applicable ordinances and other laws, and (vii) all items the Agreed Repairs List, then Seller and/or Landlord shall promptly make such repairs and replacements at its cost.

*Id.*, Recital E.[1]

Defendant obtained inspection reports pursuant to this provision. *See* Compl. ¶ 9–10. Since the reports identified deficiencies in Plaintiff's properties, *id.* ¶ 11, the parties' lease agreements "contained a detailed check list of items that needed correction," *id.* ¶ 12; *see also* Def.'s Mem., Ex. B (Huntington Lease) § 1.2; Def.'s Mem. Ex. C (Barboursville Lease) § 1.2. The leases provided that the "repairs were to be completed at the cost of the Plaintiff." Compl. ¶ 12; *see also* Huntington Lease § 1.2; Barboursville Lease § 1.2.

According to Plaintiff, a "controversy exists between the parties regarding whether Plaintiff substantially completed the repairs agreed to and fulfilled its obligations pursuant to the lease agreements." Compl. ¶ 15. Plaintiff also alleges that "the Defendant has unilaterally added several additional items that were not contained in the lease agreements and demanded that those items be addressed by Plaintiff at its cost and expense." *Id.* ¶ 16.

Defendant filed a motion to stay this action and compel Plaintiff to arbitrate the dispute. As Defendant points out, the APA provides that "[a]ll disputes arising under this Agreement

---

[1] The choice-of-law provision in the APA states that the agreement is governed by Alabama law. *See* APA § 8.7. Under Alabama law, "recitals . . . cannot control the clearly expressed stipulations of the parties . . . ." *Gwaltney v. Russell*, 984 So. 2d 1125, 1133 (Ala. 2007) (quoting *Ingalls Iron Works Co. v. Ingalls*, 53 So. 2d 847, 850 (Ala. 1951)). Here, however, the APA provides that the "recitals set forth hereinabove are expressly incorporated in and made a part of this Agreement." APA § 8.10. Accordingly, Recital E is a binding provision of the APA.

. . . shall be resolved by arbitration . . . ." APA § 6.2(e)(ii). Plaintiff opposes the motion, arguing that the APA's arbitration provision does not apply because the parties' dispute arises out of the lease agreements, not the APA. *See* Pl.'s Resp. 16.

## LEGAL STANDARD

The Federal Arbitration Act (FAA) requires a court to stay an action based on "any issue referable to arbitration under an agreement in writing . . . until such arbitration has been had in accordance with the terms of the agreement . . . ." 9 U.S.C. § 3.

A court may compel a non-moving party to arbitrate a dispute when the moving party demonstrates "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute." *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500–01 (4th Cir. 2002) (quoting *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991)).

In ruling on a motion to stay and compel arbitration, "all reasonable inferences are drawn in favor of the non-moving party." *Barach v. Sinclair Media III, Inc.*, 392 F. Supp. 3d 645, 650 (S.D. W. Va. 2019) (quoting *Meridian Imaging Sols., Inc. v. Omni Bus Sols. LLC*, 250 F. Supp. 3d 13, 21 (E.D. Va. 2017)).

## ANALYSIS

"[P]arties can form multiple levels of agreements concerning arbitration." *Coinbase, Inc. v. Suski*, 602 U.S. 143, 148 (2024). They "can agree to send the merits of a dispute to an arbitrator. They can also 'agree by contract that an arbitrator, rather than a court, will resolve threshold

-3-

arbitrability questions as well as underlying merits disputes.'" *Id.* (quoting *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 65 (2019)).

Four kinds of disputes can arise from these different levels of agreements:

A contest over "the merits of the dispute" is a first-order disagreement . . . . The parties may also have a second-order dispute—"whether they agreed to arbitrate the merits—as well as a third-order dispute—"who should have the primary power to decide the second matter."

*Id.* at 148–49 (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 942–43 (1995)). Finally, when the "parties have multiple agreements that conflict as to the third-order question of who decides arbitrability," the parties may dispute who should decide which contract applies. *Id.* at 149.

In its Motion, Defendant raises a third-order and a second-order question: it asserts that the parties agreed to arbitrate whether their dispute is arbitrable; Defendant then argues that, if the Court disagrees, the Court should proceed to find that the parties agreed to arbitrate the merits of their dispute. *See* Def.'s Mem. 12

Plaintiff does not contest the existence of a dispute, the relationship of the parties' transaction to interstate commerce, or Plaintiff's failure to arbitrate the dispute. Accordingly, the Court need only determine whether the APA's arbitration provision applies to the dispute.

As an initial matter, Plaintiff argues that the Supreme Court's decision in *Coinbase* precludes this Court from submitting the parties' dispute over arbitrability to an arbitrator. *See* Pl.'s Resp. 5–6. Plaintiff misreads *Coinbase*. In *Coinbase*, the Court held that a court, not an arbitrator, should determine who decides arbitrability. *See Coinbase*, 602 U.S. at 149. Here, Defendant is not asserting that an arbitrator must determine who will decide arbitrability— Defendant is expressly asking the Court to make that determination. *See* Def.'s Mem. 12.

-4-

### A.  Who Should Decide Arbitrability

"Just as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, so the question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about *that* matter." *Coinbase*, 602 U.S. at 149 (emphasis in original) (quoting *First Options*, 514 U.S. at 943). "[C]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." *Id.* (quoting *First Options*, 514 U.S. at 944).

Here, the APA expressly incorporates "the commercial arbitration rules then in effect of the American Arbitration Association [(AAA)]." APA § 6.2(e)(iii). The AAA's *Rules and Mediation Procedures* provide[2] that an "arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim . . . ." Am. Arb. Ass'n, *Commercial Arbitration Rules and Mediation Procedures* § R-7(a) (2022).

This Court has held "that the incorporation by reference of the AAA rules which contain a provision committing the determination of arbitrability to the arbitrator [are] . . . a clear and unmistakable expression of the parties' intent to leave gateway issues to the arbitrator and not the court." *Ashworth v. Five Guys Operations, LLC*, Civ. A. No. 3:16-06646, 2016 WL 7422679, at *3 (S.D. W. Va. Dec. 22, 2016). The AAA rule only controls, however, if the APA's arbitration provision applies to this dispute in the first instance. The Court, then, must determine whether the parties' dispute is one "arising under" the APA.

The Court concludes that it is. Recital E of the APA requires Plaintiff to make certain repairs, *see* APA, Recital E, and the parties dispute whether Plaintiff has completed those repairs,

---

[2] The AAA rules currently in effect are those that were in effect when the parties executed the APA.

Compl. ¶ 16. That the disagreement also concerns the parties' lease agreements[3] is irrelevant; Plaintiff has an obligation to arbitrate a dispute arising under the APA even if the dispute also arises under a separate contract.[4]

### B. Plaintiff's Arguments

Plaintiff raises several arguments against Defendant Motion. None are convincing.

*First*, Plaintiff argues that it would be unfair to force WA Trust, LLC, a party to the lease agreements but not to the APA, to comply with the APA's arbitration provision. *See* Pl.'s Resp. 7. Defendant, however, has not attempted to compel WA Trust to participate in arbitration. If a related dispute arose between one of the parties and WA Trust, arbitration between Geer and JHHC would not prevent a court from hearing that dispute. *See KPMG LLP v. Cocchi*, 565 U.S. 18, 19 (2011) (per curiam) ("The [FAA] has been interpreted to require that if a dispute presents multiple claims, some arbitrable and some not, the former must be sent to arbitration even if this will lead to piecemeal litigation."). Accordingly, there is no risk that WA Trust will be forced to comply with a contract it did not sign.

*Second*, Plaintiff argues that the APA and the lease agreements should not be "read together" because they "address different properties [and] issues and are entered into with distinct purposes . . . ." Pl.'s Resp. 10; *see id.* at 15. The Court, however, is not "reading together" the parties' agreements. The Court is simply applying the APA's arbitration provision to a dispute arising under the APA. Also, Plaintiff has cited no authority suggesting that differences between two contracts can reduce the scope of an arbitration provision in one of those contracts.

---

[3] As noted above, both lease agreements contain language similar to Recital E in the APA, so if a party breached Recital E, it likely also breached the lease agreements.

[4] Unless, perhaps, the separate contract expressly provides that the APA's arbitration provision does not apply to disputes arising under the separate contract. Plaintiff does not contend that the lease agreements so provide.

*Third*, Plaintiff argues that the parties' agreements have different lifespans "such that attempting to read them together leads to an irrational result." *Id.* 11. The "irrational result" Plaintiff seems to fear is the APA's arbitration provision applying to lease disputes after the APA expires. *See id.* However, it is hard to imagine a dispute "arising under" the APA after the APA expires. It is therefore unlikely that the arbitration provision would apply to lease disputes at that point.

*Fourth*, Plaintiff argues that the arbitration provision does not apply because "JHCC and its counsel did not request, insist or negotiate arbitration as part of the lease agreements . . . ." *Id.* at 12. This is irrelevant. Since the present dispute arises under the APA, the APA's arbitration provision applies regardless of whether JHCC attempted to add a similar provision to the lease agreements.

*Fifth*, Plaintiff argues that the arbitration provision does not apply because the lease agreements did not "adopt" the APA. *See id.* This, too, is irrelevant. The APA's arbitration provision applies to this dispute because it arises under the APA, not because the lease agreements adopted any part of the APA.

*Sixth*, Plaintiff argues that the arbitration provision is inapplicable because, "where a document specifically includes certain terms, it implies the exclusion of all others not explicitly mentioned." *Id.* at 14. The arbitration provision, however, applies not because it is included in the lease agreements but because the present dispute arises under the APA.

*Seventh*, Plaintiff argues that the arbitration provision does not apply because the parties did not intend it to apply. *See id.* at 14–15. The Supreme Court of Alabama, however, has held that "[w]here contract terms are unambiguous, [courts] do not look beyond the plain language of the contract to second-guess the intentions of the parties; nor will [courts] speculate about what may

have been the subjective expectations of the parties." *Title Max of Birmingham, Inc. v. Edwards*, 973 So. 2d 1050, 1054 n.1 (Ala. 2007); *see also Hansen-Gier Family Trust v. Haywood*, 902 S.E.2d 174, 181 (W. Va. 2024) ("A court must apply a plain expression of the parties' intent because 'it is not [for] . . . a court to alter . . . the clear meaning and intent of the parties as expressed in unambiguous language *in their written contract* . . . ." (emphasis added) (quoting Syl. Pt. 3, *Cotiga Dev. Co. v. United Fuel Gas Co.*, 128 S.E.2d 626 (W. Va. 1962)). Here, the APA unambiguously obligates the parties to arbitrate disputes arising under the APA, and nothing in the text of the lease agreements purports to modify that condition or limit its scope. Accordingly, the parties' subjective intent is irrelevant.

*Eighth*, Plaintiff argues that applying the arbitration provision would require the Court to "construe" or "rewrite" the lease agreements. *See* Pl.'s Resp. 16. Plaintiff is mistaken. The Court is not suggesting that the lease agreements themselves require arbitration. Instead, it is applying the plain language of the APA. The lease agreements are silent as to arbitration, so applying the APA does not "rewrite" them.

Since the parties' dispute arises under the APA, the APA's arbitration provision applies. Accordingly, the parties have agreed that an arbitrator, not the Court, will decide the arbitrability of their claims.

## CONCLUSION

The Court **GRANTS** Defendant's Motion to Stay Proceedings and to Compel Arbitration (ECF 6). The Court **DIRECTS** Plaintiff to participate in arbitration and **STAYS** this action until arbitration has been had in accordance with the terms of the APA.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER:      February 24, 2026

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE